IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMERIND RISK MANAGEMENT
CORPORATION, a Section 17 federally
chartered corporation,

      Plaintiff,

  v.                                                      Civil No. 15-00072 WJ/KBM

BLACKFEET HOUSING, BLACKFEET
HOUSING LIMITED PARTNERSHIP #1,
BLACKFEET HOUSING LIMITED
PARTNERSHIP #2, BLACKFEET HOUSING
LIMITED PARTNERSHIP #3, BLACKFEET
HOUSING LIMITED PARTNERSHIP #4,
NATIVE AMERICAN HOUSING FUND I
LIMITED PARTNERSHIP, NATIVE
AMERICAN HOUSING FUND II LIMITED
PARTNERSHIP, NATIVE AMERICAN HOUSING
FUND IV LIMITED PARTNERSHIP, AND
NATIVE AMERICAN HOUSING FUND V
LIMITED PARTNERSHIP,

      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
and
DENYING THE MOTION WITH REGARD TO OTHER GROUNDS FOR DISMISSAL**

THIS MATTER comes before the Court upon a Motion to Dismiss for Failure to State a Claim, filed on March 23, 2015 by Blackfeet Housing and Blackfeet Limited Partnerships ("Blackfeet Housing" or "Defendants"), #1-#4 (**Doc. 17**). Having reviewed the parties' briefs and applicable law, the Court finds that Defendants' motion is well-taken on the grounds that the

Court lacks subject matter jurisdiction over this case, but denies the motion with regard to the other grounds for dismissal raised by Defendants.

**BACKGROUND**

Defendants seek dismissal of the complaint in this case for lack of jurisdiction under Fed.R.Civ.P.12(b)(1) and for failure to state a claim upon which relief can be granted, under Rule 12(b)(6). In addition, Defendants contend that Plaintiff has failed to comply with the requirement of exhaustion of Tribal court remedies. The underlying facts concern claims of insurance bad faith and breach of insurance contract alleged by Defendants against Plaintiff based on Plaintiff's denial of coverage for flood damage to Defendants' property.

The Complaint asserts federal jurisdiction under 28 U.S.C. §§1331 and 1362, and 9 U.S.C. §4. Compl., ¶ 10. Plaintiff also seeks declaratory relief, *see* Compl., ¶¶36-44, although the Complaint does specifically mention that the basis for this relief is the Declaratory Judgment Act, to 28 U.S.C. ¶¶2201 and 2202.

A.   Establishment of Amerind

Blackfeet Housing is a non-profit organization formed to deliver housing to low income Blackfeet tribal members. Blackfeet Housing "BH" purchased insurance from Amerind Risk Management Corporation ("Amerind") which is a federally chartered corporation pursuant to Section 17 of the Indian Reorganization Act ("IRA"), 25 U.S.C. §477. Amerind was formed by tribes and Indian housing authorities in 1986. Amerind's insurance component for non-Native American Indian Housing Self-Determination Act ("NAHASDA") stock was chartered in 2010 by three tribes to provide affordable insurance products and services to Indian housing authorities. This insurance includes flood insurance. *See* Ex. E to Compl. None of the chartering tribes receive any benefits from Amerind. Compl, at 1-2.

Defendants are Tribal entities formed by the Blackfeet Tribe. They have an inter-tribal relationship with Amerind through various insurance agreements. Compl., ¶¶3-9. The inter-tribal agreement between Amerind and Defendants which is relevant to this case is a March 30, 2012 Tribal Operations Protection Plan Participation Agreement ("TOPP" or "Participation Agreement"). Compl., Ex. A. As a "Participant," each Defendant has agreed to join with other Tribal Participants in the TOPP to "jointly pool their financial resources to share in and protect against financial risks common among them." Compl., Ex. A at 1.

According to the complaint, the Participation Agreement states that the parties agreed to an explicit arbitration clause that includes provisions governing selection of an arbitrator; place of arbitration; and use of Tribal courts. Compl., ¶17. Under the Participation Agreement, Defendants purchased TOPP insurance products under four different coverage documents. Compl., Ex. B ("Scope of Coverage"). The Complaint alleges that the TOPP Scope of Coverage also calls for arbitration of any dispute between the parties, although in less detail in comparison with the arbitration provision in the Participation Agreement, such as provisions requiring the use of three arbitrators pursuant to the Rules of the Center for Public Resources ("CPR"). Compl., ¶¶17-18. It is Plaintiff's position that both the Participation Agreement and the Scope of Coverage agree that the parties shall submit disputes to binding arbitration in New Mexico and that neither the Participation Agreement nor the Scope of Coverage documents specifies or restricts which arbitration company shall undertake the arbitration. Defendants' position, with which Plaintiff disagrees, is that Amerind is precluded from bringing arbitration before the AAA.

B.  Underlying Factual Background

In August and September of 2013, Defendants submitted claims to Amerind concerning water and mold damage in 110 of its housing units which were included in the TOPP. In

February of 2014, Blackfeet Housing submitted a demand letter. Amerind conducted an investigation under four claim numbers, which resulted in similar opinions that the water and mold damage was caused by faulty construction, normal wear and tear, and maintenance issues—all of which are excluded by the TOPP. On March 17, 2014, Amerind denied coverage. *See* Ex. A (denial of claim letter); Ex. 2 (Kittson Aff.).[1]

Instead of proceeding to arbitration, Blackfeet Housing filed a complaint against Amerind for breach of insurance contract and bad faith on April 17, 2014 in the Blackfeet Tribal Court of the Blackfeet Indian Reservation in Browning, Montana. *See Blackfeet Housing v. Amerind Risk Management Corporation,* Case No. 2014CA60 (hereinafter, "Tribal Court Lawsuit"). Amerind responded by making a special limited appearance in the Tribal Court, moving to dismiss the matter on various jurisdictional grounds. Ex. B. The motion is still pending in Tribal Court.

On December 17, 2014, Amerind filed a Demand for Arbitration with the American Arbitration Association ("AAA"). On December 30, 2014, Blackfeet Housing filed a motion to dismiss on the basis that neither the Participant Cell Agreement ("cell agreement") nor the Trial Operations Protection Plan ("TOPP") Agreement allowed Amerind to file with the AAA (Ex. 6, Mot. to Dismiss). Amerind also filed the instant action in federal court asking this Court to require Blackfeet Housing to submit to arbitration, alleging that the two insurance agreements require arbitration. The parties have agreed to hold the AAA arbitration in abeyance, with concurrence from the AAA.

**Legal Standards**

Defendants' motion raises arguments under both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) tests the viability of the allegations in a complaint. To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[1] Defendants' exhibits are numbered; Plaintiff's exhibits are designated by letter.

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept all the complaint's factual allegations as true, the same is not true of legal conclusions. *Id*.  Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice.  *Twombly*, 550 U.S. at 555.

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of jurisdiction over the subject matter. Fed.R.Civ.P.12(b)(1). When making a Rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends by relying on affidavits or other evidence properly before the court.  *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir.1995); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995). A court has broad discretion to consider affidavits or other documents to resolve disputed jurisdictional facts under rule 12(b)(1). *See Holt*, 46 F.3d at 1003. In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion.  *Id*. (citing to *Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir.), cert. denied, 484 U.S. 986 (1987)).  Where, however, the court determines that jurisdictional issues raised in rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either Rule 12(b)(6) or Rule 56.  *See Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir.1999), *cert. denied*, 528 U.S. 964 (1999).

Here, the Complaint seeks relief in the form of specific performance requiring arbitration. *See* Compl., ¶¶29-35.  The Court's consideration of the jurisdictional issues will not extend to a consideration of the specific arbitration provisions in the Participation Agreement and the Scope of Coverage documents, and thus is not intertwined with the merits of a substantive claim in the case.  Therefore, the Court's resolution of the issue will be made under Rule 12(b)(1) and need

not be resolved under either rule 12(b)(6) or Rule 56.  *Cmp. Davis ex rel Davis v. U.S.*, 343 F.3d 1282, 1295 (10th Cir. 2003) (exhaustion of administrative remedies not an aspect of substantive claim and thus there was no need to convert motion to Rule 12(b)(6) or Rule 56 standard of review).[2]

## DISCUSSION

Defendants seek dismissal of Plaintiff's claims under Fed.R.Civ.P.12(b)(1) for lack of jurisdiction over Defendants.  Defendants also contend that Plaintiff has failed to comply with the requirement of exhaustion of Tribal court remedies, which bars Amerind's attempt to circumvent jurisdiction of the Blackfeet Court.  Defendants request that this Court dismiss all proceedings in this action pending Plaintiff's exhaustion of remedies in the court of Blackfeet Nation, or stay the case until the Tribal court has had an opportunity to determine its jurisdiction over the case and if jurisdiction exists.  Defendants also seek to dismiss Plaintiff's claims under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Plaintiff contends that the Blackfeet Tribal Court does not have jurisdiction over Amerind because Amerind has not waived its sovereign immunity and there is no federal law abrogating that immunity.  Amerind submits that it properly submitted the parties' dispute to binding arbitration in accordance with the parties' agreements.

Defendants raise several grounds for dismissal: (1) this Court lacks jurisdiction to hear this case because it  does not arise under the Constitution, treaties or Federal laws; (2) Plaintiff Amerind has failed to exhaust its tribal court remedies; and (3) the Blackfeet laws do not permit an arbitration clause in an insurance contract.

---

[2] Defendants express no opinion on the standard of review in their motion or reply.

## I.     Federal Jurisdiction

The Complaint asserts federal jurisdiction under 28 U.S.C. §§ 1331, 1362 and under the Federal Arbitration Act ("FAA"), 9 U.S.C. §4, and also seeks declaratory relief.

### A.     Declaratory Relief

Both parties recognize that the Declaratory Judgment Act, 28 U.S.C. §2201, creates a remedy in federal court but does not in itself confer jurisdiction on federal courts. *See Devon Energy Production Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012) (because the Declaratory Judgment Act "does not confer jurisdiction upon federal courts, . . . the power to issue declaratory judgments must lie in some independent basis of jurisdiction [under §1331]") (citation omitted); *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 17 (1983) (the Declaratory Judgment Act was intended to affect only the remedies available in a federal district court). In determining whether federal jurisdiction exists, courts may also look to the cause of action which the declaratory defendant threatens to assert. *See Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 16, n.14 (1983). If that cause of action does not itself involve a claim under federal law, "it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim." *Id.* Here, in the underlying complaint brought by Defendants in Tribal court, Defendants allege claims grounded in negligence, breach of fiduciary duty and breach of contract—none of which come close to asserting a basis for federal jurisdiction. Ex. 3.

## II.     Jurisdiction Under §1331 and §1362

Federal courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331. For a case to "arise under" federal law,

7

a plaintiff's well-pleaded complaint must establish either (1) that federal law creates the cause of action or (2) that the plaintiff's asserted right to relief depends on the resolution of a substantial question of federal law. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983); *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.,* 693 F.3d 1195, 1202-04 (10th Cir. 2012) (suit arises under federal law "only when the plaintiff's statement of his own cause of action shows that it is based on federal law").

Under §1362 the district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

Amerind contends that this Court has subject matter jurisdiction over this case because it is a Tribe" under §1362 and because this action arises under federal law.   Defendants claim that neither is correct.  Defendants rely on language in the charter creating Amerind which states that while the Corporation (Amerind) is a legal entity jointly owned by the Charter Tribes, it is "distinct and separate" from the Charter Tribes" and the "activities, transactions, obligations, liabilities and property of the Corporation are not those of the Charter Tribes."  Ex. 1 at 2.  This language is not dispositive, however, because it does not state that Amerind is *not* a Tribe or does not qualify as a Tribe; it merely states that Amerind is *separate* from the Charter Tribes.  Amerind offers no conclusive legal basis for its claim that it is in fact a Tribe, but there is case law which holds that Amerind is entitled to tribal sovereign immunity.  *See Amerind Risk Management Corp. v. Malaterre*, 633 F.3d 680, 685 (8th Cir. 2011).  The Eighth Circuit in that case noted specifically that Amerind was "not an ordinary insurance company" because its purpose is to administer a *self-insurance* risk pool for Indian Housing Authorities and Indian

tribes." *Id.* The court also found that Amerind was entitled to tribal sovereign immunity because it "serves as an *arm* of the [Charter Tribes] "and not as a mere business . . . ." *Id.* (emphasis added).

The *Amerind* case comes close to holding that Amerind is a Tribe, but regardless of its status, Plaintiff would still have to satisfy the other part of §1331 and §1362 in order to establish federal jurisdiction.[3] *See Peabody Coal Co. v. Navajo Nation*, 373 F.3d 945, 949 (9th Cir. 2004) ("the fact that the defendant is a Native sovereign is not, by itself, sufficient to raise a federal question"); *Navajo Tribal Utility Authority v. Arizona Dept. of Revenue*, 608 F.2d 1228, 1231 (9th Cir. 1979) (Suits brought by tribal corporations have also been found to fall outside the scope of §1362); *Mescalero Apache Tribe v. Martinez*, 519 F.2d 479, 480 (10th Cir. 1975) (both §§1362 and 1331 require that the matter in controversy be one arising under the Constitution, laws, or treaties of the United States). Thus, Amerind must still show that it has asserted a matter in controversy that arises under federal law in order for this Court to have jurisdiction over this case.

A.  Jurisdiction Under U.S.C.§4

In this case, the Complaint seeks declaratory relief, which as the Court has already discussed, is insufficient on its own as a basis for federal jurisdiction, as well as an order to compel arbitration of the underlying matter. The Complaint contains no federal causes of action or matters which require resolution of a substantial question of federal law. Thus, it would seem that Plaintiff has failed to assert federal jurisdiction under the well-pleaded complaint rule.

---

[3] While both §1331 and §1362 require that the matter in controversy be one arising under the constitution, laws, or treaties of the United States, it has been suggested that the "arising under" language in §1362 should be more broadly construed than the same language in §1331. *See Mescalero Apache Tribe*, 519 F.2d at 481. However, without a more definitive analysis by the United States Supreme Court on the issue, a "good case" can be made for construing the language the same under both statutes. *Id*. (rejecting Apache Tribe's application of broader interpretation of federal question jurisdiction under §1362).

The Complaint also asserts jurisdiction under the Federal Arbitration Act ("FAA"), 9 U.S.C. §4, which provides that parties may petition federal district courts to compel arbitration where there has been a failure to arbitrate under an agreement. *See Vaden v. Discover Bank,* 556 U.S. 49, 66 (2009) (section 4 of the FAA does not enlarge federal-court jurisdiction; "rather, it confines federal courts to the jurisdiction they would have "save for [the arbitration] agreement"). However, a federal court may "look through" a §4 petition to determine whether it is predicated on an action that "arises under" federal law. *Vaden v. Discover Bank*, 129 S.Ct. 1262, 1266 (2009) (in a §4 petition to enforce arbitration, federal court should determine jurisdiction based on parties' underlying substantive controversy); *see also Ute Indian Tribe of the Uintah and Ouray Reservation v. Ute Distribution Corp.,* 455 Fed.App. 856 (10th Cir. 2012) (suit arises under federal law "only when the plaintiff's statement of his own cause of action shows that it is based upon federal law") (citing *Vaden*).[4]  The *Vaden* decision by the Supreme Court abrogated *Wisconsin v. Ho-Chunk Nation*, 463 F.3d655 (7th Cir. 2006), which held that a federal court may not "look through" the plaintiff's arbitration request to the underlying dispute, finding the nature of the underlying dispute "irrelevant for purposes of subject matter jurisdiction, even on a motion to compel [arbitration]." Instead, "the motion itself must involve diversity or federal question jurisdiction." 463 F.3d at 659.  Thus, it seems that *Vaden* allows a more flexible treatment of the "well-pleaded complaint" rule by allowing federal courts to peek under the assertions in a petition to compel arbitration and see if any of the underlying disputes would confer federal jurisdiction.

---

[4]  Other provisions of the FAA, such as §9 which provides for confirmation of arbitration awards, have been treated similarly in that these provisions in themselves do not confer subject matter jurisdiction without an independent basis for federal jurisdiction.  See General Atomic Co., 655 F.2d 968, 969 (9th Cir. 1981), cited in Peabody Coal Co. v. Navajo Nation, 373 F.3d 945, 949 (9th Cir. 2004).

The test for this inquiry is whether any of those claims require reference to federal statutory or common law. *Vaden* involved a controversy between the parties which arose from the cardholder's alleged debt owed to bank. The Supreme Court held that the matter was "entirely state-law grounded. . . ." and as a result, did not "arise under" federal law or "qualify under any other head of federal-court jurisdiction." 556 U.S. at 51, 66.

In *Peabody Coal Co. v. Navajo Nation*, 373 F.3d 945 (9th Cir. 2004), the Ninth Circuit held that an action to enforce an arbitration award did not present a federal question because the question of whether defendant had breached the arbitration award could be resolved by the common law of contracts. *Id.* at 951. The plaintiff did not contest "the validity of the coal mining leases" or allege that defendant had breached a lease or lease amendment, both of which would have required reference to federal statutory or common law. *Id.* at 949. *Peabody* provides an overview of case law addressing whether federal subject matter existed in the context of commercial contracts or leases involving tribes. It notes that the federal question in each of these cases was "either a tribal government's authority to apply tribal law to the commercial activities of non-Indian companies, or the validity of mineral leases themselves, "which are both questions that can be answered only by reference to federal statutory or common law." *Id.* at 950 (citing various cases) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S.Cal.,* 463 U.S. 1, 27-28 (1983) (plaintiff must "establish that its right to relief necessarily depends on resolution of a substantial question of federal law"). *See, e.g., Comstock Oil & Gas, Inc. v. Alabama & Coushatta Indian Tribes of Texas*, 261 F.3d 567 (5th Cir. 2001) (federal court had jurisdiction to determine whether oil and gas leases were valid due to the extensive federal regulation of these types of leases; *Goldman, Sachs & Co. v. Golden Empire Sch. Financing Auth.,* 764 F.3d 210 (2d Cir. 2014); *cmp. Littell v. Nakai*, 344 F.2d 486

(9th Cir. 1965) (no federal question where dispute involved a "straightforward interpretation" of an employment contract, and the fact that the contract was approved by federal officials was not relevant to the resolution of the parties' dispute); *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians*, 999 F.2d 503, 507 (11th Cir. 1993) (no federal question alleged where plaintiff only presented facts establishing breach of contract claim).

B.  Whether Federal Question Exists

In order to establish federal jurisdiction, then, the Court may "look through" Amerind's complaint to see whether this Court would have jurisdiction over the dispute underlying the arbitration agreement. The question is whether the parties' underlying substantive controversy arises out of a federal question.

Amerind argues that one can draw reasonable inferences from facts recited in the Complaint concerning the parties' status as sovereign entities and the incorporation of these facts into its claims for relief. A party's status may satisfy one part of §1362, but is insufficient to establish that a claim arises under federal law, as is required under both §1331 and §1362. In this case, the Complaint seeks to compel arbitration. Amerind maintains that the pertinent claims are those raised by Plaintiff in the federal complaint, and not those asserted in the complaint filed by Defendants in the Tribal court. *See* Doc. 23 at 12 n.9. As the Court has previously noted, Amerind cannot establish federal jurisdiction based on the allegations in the federal Complaint. This leaves, as Plaintiff's only other recourse, a "look through" the Complaint at the underlying matter to see if federal jurisdiction is conferred through issues litigated on that level, thereby satisfying the "arising under" requirement of §1331 and §1362.

When the Court looks through" the federal Complaint, the issues underlying the arbitration dispute are contained in the complaint filed by Defendants in Blackfeet Tribal Court.

That complaint is plainly grounded in state law, alleging claim of negligence, breach of contract and breach of fiduciary duty. Ex. 3. No federal matters exist in those underlying claims; claims of negligence and breach of an insurer's breach of contract are not resolved by reference to federal statutory or common law. Throughout the Complaint are references to the Participation Agreement and the TOPP coverage documents which Plaintiffs contend require arbitration. These agreements do not require reference to federal regulations or statutes for resolution, and so there is no issue "arising under" federal law.

Federal question may also be found to exist where a tribal court's attempt to assert authority over a non-Native party. *See, e.g., Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1501 (10th Cir. 1997) (the scope of a tribal court's jurisdiction is a federal question over which federal district courts have jurisdiction); *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 853 (1985); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1077–78 (9th Cir.1990) (holding that whether a tribe had the authority to enforce a tribal ordinance against a non-Native was a federal question); *see also Peabody,* 373 F.3d at 951 (no federal question when complaint made no reference to any dispute about asserted tribal court jurisdiction or authority and therefore asserted no basis for federal jurisdiction on those grounds).

In the federal complaint, Amerind seeks to compel arbitration based on the Participation Agreement and TOPP coverage documents. Amerind is not alleging in its Complaint that the Blackfeet Tribe has exceeded its jurisdictional authority over it, nor does it seek a determination as to whether Defendants have jurisdiction over the complaint that was filed by Defendants in Tribal court. Plaintiff has filed a motion to dismiss based on such jurisdictional grounds in Tribal court—which is still pending—but that motion is not before this Court, nor are any of those issues inserted into the federal Complaint. *Cmp. Amerind Risk Management Corp. v.*

*Malaterre*, 633 F.3d 680 (8th Cir. 2011) (declaratory judgment action sought determination in federal district court that Tribe lacked jurisdiction over tort litigation between Amerind and Tribe). Defendants have indeed raised tribal jurisdiction issues, but these do not drive the federal jurisdiction question, nor can they be considered as part of the "well-pleaded complaint" inquiry. *See Vaden,* 556 U.S. at 59 ("federal question jurisdiction cannot rest upon an actual or anticipated counterclaim").[5]

Because the instant Complaint fails to assert or contain any substantive federal claim, this Court lacks subject matter jurisdiction over this case.

## II.     Other Grounds for Dismissal

Defendants have raised other jurisdictional arguments, such as Plaintiff's failure to exhaust tribal remedies, but the Court has no jurisdiction to hear these other arguments, having found that this Court lacks subject matter jurisdiction over the case.[6]

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss for Failure to State a Claim (**Doc. 17**) is hereby GRANTED on the grounds that the Court lacks subject matter jurisdiction over this case, and denies the motion with regard to the other grounds for dismissal raised by Defendants.

A Judgment shall issue separately.

_____
UNITED STATES DISTRICT JUDGE

---

[5] The issues of tribal jurisdiction may need resolution, but that will not happen here in federal court. The Court notes that the Complaint envisions the possibility of other "Courts of Competent Jurisdiction"), including the second Judicial District Court of the State of New Mexico. Compl., at 5-6.

[6] This is not to say that these issues cannot be addressed in another venue, such as state court. *See, e.g.,* Compl., at 5-6 (noting that the Second Judicial District Court of the State of New Mexico is a "Court of Competent Jurisdiction").